IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| April M. Bowman, | ) | C/A No. 0:15-1782-DCN-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, April M. Bowman, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

PJG

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    whether the claimant has a "severe" impairment;

(3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)    whether the claimant can perform her past relevant work; and

(5)    whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).



## ADMINISTRATIVE PROCEEDINGS

In August 2009, Bowman applied for DIB, alleging disability beginning August 14, 2004.

Bowman's application was denied initially and upon reconsideration, and she requested a hearing

before an ALJ.  A hearing was held on February 3, 2011, at which Bowman, who was represented

by Jeffery Sabel, Esquire, appeared and testified.  At the hearing, Bowman amended her alleged

onset date to November 1, 2004.  The ALJ issued a decision on February 25, 2011 finding that

Bowman was not disabled.  (Tr. 36-45.)  Bowman submitted additional evidence to the Appeals

Council, which denied her request for review (Tr. 1-5), and Bowman appealed to the United States

District Court.  The Honorable David C. Norton, United States District Judge, vacated the ALJ's

February 25, 2011 decision and remanded Bowman's claim for further consideration.  (Tr. 509-22.)

Specifically, the district court stated that the only issues on remand were whether Bowman's inability

to perform past relevant work prevented her from performing any light work, and whether at step

five there were jobs that existed in significant numbers in the national economy that Bowman could

have performed.  (Tr. 521.)  The Appeals Council issued an order on April 28, 2014 remanding the

matter for further proceedings consistent with the order of the district court.  (Tr. 545-46.)

A second hearing was held on November 5, 2014, at which Bowman appeared and testified

and continued to be represented by Jeffery Sabel, Esquire.  The ALJ also heard testimony from a

vocational expert.  The ALJ issued a decision on January 26, 2015 finding that Bowman was not

disabled.  (Tr. 440-51.)

Bowman was born in 1971 and was thirty-three years old on November 1, 2004—her

amended alleged disability onset date.  (Tr. 133.)  She has a high-school education and has past

relevant work experience as a server at a restaurant.  (Tr. 169, 173.)  Bowman alleged disability due

to injury to her lower back and hips.  (Tr. 168.)

In applying the five-step sequential process, the ALJ found that Bowman had not engaged in substantial gainful activity from November 1, 2004—her amended alleged onset date—through her date last insured of December 31, 2009.  The ALJ also determined that, through the date last insured, Bowman's degenerative disc disease was a severe impairment.  However, the ALJ found that, through the date last insured, Bowman did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings").  The ALJ further found that, through the date last insured, Bowman retained the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) with some additional limitations.  Specifically, claimant could lift and carry up to 20 pounds occasionally and 10 pounds frequently.  She could stand, walk, and sit for 6 hours each in an 8-hour day.  Claimant, however, could only occasionally stoop and could only occasionally climb ramps and stairs.  She could never climb ladders.  She was limited to performing simple, routine, repetitive tasks consistent with unskilled work.

(Tr. 444.)  The ALJ found that, through the date last insured, Bowman was unable to perform any past relevant work, but that considering Bowman's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Bowman could perform.  Therefore, the ALJ found that Bowman was not disabled from November 1, 2004, the amended onset date, through December 31, 2009, the date last insured.  This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829



F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's

decision is supported by substantial evidence and whether the correct law was applied.  See Myers

v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more

than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig, 76 F.3d

at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence,

make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  Id.

Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold

it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## ISSUES

For this judicial review, Bowman first appears to argue that the ALJ erred in determining

Bowman's residual functional capacity by essentially challenging the ALJ's evaluation of opinions

from two of her treating physicians.  Bowman next argues that the ALJ erred in evaluating the

testimony from the vocational expert.  (Pl.'s Br., ECF No. 21.)

## DISCUSSION

**A.     Opinion Evidence**

The crux of Bowman's first issue on appeal is that the ALJ erred in evaluating opinion

evidence from Dr. Steven Poletti of Southeastern Spine Institute and Dr. Mark Netherton of Palmetto

Intervention Pain Management.  Typically, the Social Security Administration accords greater weight

to the opinion of treating medical sources because treating physicians are best able to provide "a

detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. § 404.1527(c)(2).

However, "the rule does not require that the testimony be given controlling weight."  Hunter v.

Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*).  Rather, a treating physician's opinion is



evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has

examined the applicant, (2) the treatment relationship between the physician and the applicant, (3)

the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and

(5) whether the physician is a specialist."  Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005)

(citing 20 C.F.R. § 404.1527).  Any other factors that may support or contradict the opinion should

also be considered.  20 C.F.R. § 404.1527(c)(6).  In the face of "persuasive contrary evidence," the

ALJ has the discretion to accord less than controlling weight to such an opinion.  Mastro v. Apfel,

270 F.3d 171, 178 (4th Cir. 2001).  Further, "if a physician's opinion is not supported by clinical

evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly

less weight."  Id. (quoting Craig, 76 F.3d at 590).

> Additionally, SSR 96-2p provides that a finding that
>
> a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5.  This Ruling also requires that an ALJ's decision "contain

specific reasons for the weight given to the treating source's medical opinion, supported by the

evidence in the case record, and must be sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons

for that weight."  Id. at *5.

PJG

In October 2010, Dr. Netherton completed a Lumbar Spine Questionnaire.[2]  (Tr. 379-84.)

At issue here, Dr. Netherton opined that Bowman:  could sit for less that two hours total in an eight-

hour workday and stand/walk for less than two hours in an eight-hour workday; would require

periods of walking around every hour for ten minutes at a time; would require a job with a sit/stand

option; would have to take unscheduled breaks during the day (every hour for ten minutes); would

never be able to lift ten pounds and could rarely lift less than ten pounds; would never be able to

twist, crouch, or climb ladders; could rarely stoop or climb stairs; would miss more than four days

per month, and would not be able to engage in gainful employment.  (Tr. 382-84.)  In the opinion,

Dr. Netherton referenced Bowman's March 2009 MRI and lumbar diagnoses.  Dr. Netherton

indicated that Bowman's symptoms included lumbar spine pain, hip pain, leg pain, and difficulty

with ambulation.  Dr. Netherton stated that Bowman's pain was between a six and eight out of ten

on most visits despite her medication; checked boxes indicating that Bowman's objective signs of

pain included abnormal gait, positive straight leg raising, muscle spasm, and tenderness; and stated

that she could not bend her lumbar spine more than 45° without significant pain and experienced a

"thump/click" in her hips with flexion.  (Tr. 380.)  Dr. Netherton also checked the box indicating that

Bowman's pain or other symptoms would constantly be severe enough during a typical workday to

interfere with her attention and concentration needed to perform even simple work tasks.  Finally,

he stated that Bowman could not function without some medication, but that her narcotic medication

caused depression and nausea and made her drowsy.  (Tr. 381.)

---

[2] The court observes that in Bowman's prior case, she similarly argued that the ALJ erred in weighing this opinion from Dr. Netherton; however, the district court found that the ALJ's decision regarding this opinion evidence was supported by substantial evidence. (See Tr. 14-11 at 37-39.)



The opinion evidence at issue from Dr. Poletti appears to rest on testimony offered by Dr. Poletti in a May 2009 deposition related to Bowman's workers' compensation case.  Bowman argues that Dr. Poletti testified that Bowman had reached maximum medical improvement, that he had no further recommendations for surgical intervention, and that he recommended following through with the recommendations from her pain management specialist.  Bowman also stated that Dr. Poletti testified that Bowman "will probably have some measure of chronic pain and should pursue some course of narcotic medications and towards a path towards Social Security Disability."  (Pl.'s Br. at 7-8, ECF No. 21 at 7-8.)   Dr. Poletti further testified that Bowman's "whole person" was 30% disabled, and her lumbar spine was 40% disabled.  (Tr. 658, 661).

The ALJ, as he did in the prior decision, afforded little weight to the majority of Dr. Netherton's opinion.[3]  In evaluating this opinion, the ALJ stated that Dr. Netherton's own treatment notes and the other medical evidence of record did not support his conclusions.  The ALJ further stated in his opinion following remand that

> [i]n particular, the evidence reveals claimant received only conservative treatment before her November 2007 surgery, and the treatment notes of Dr. Netherton and other providers indicate that claimant experienced improvement with surgery and other subsequent treatment.  Moreover, claimant's reports of her own activities as discussed above in this decision are inconsistent with the degree of physical limitations reported by Dr. Netherton at exhibit 20F.

(Tr. 449-50.)

With regard to Dr. Poletti's testimony, the ALJ first noted that Dr. Poletti's statements that he had no further recommendations for surgical intervention and that Bowman should follow through with a pain management specialist to be "consistent with Dr. Poletti's own treatment notes and pain

---

[3] The ALJ afforded some weight to Dr. Netherton's opinion that pain constantly interfered with Bowman's attention and concentration, finding it reasonable that "pain would have limited [Bowman] to the performance of simple, routine, repetitive tasks."  (Tr. 450.)



management treatment notes which indicate that since Dr. Poletti's deposition, [Bowman] has received only conservative care." (Tr. 449.)  However, the ALJ continued as follows:

> In addition, in giving his deposition testimony little weight, I note that Dr. Poletti's "whole body" impairment rating does not provide any insight into specific functional limitations. Likewise, Dr. Poletti's regional impairment rating of approximately 40% relating to claimant's back does not provide any specific functional limitations, and Dr. Poletti even stated several times that he was not even sure of claimant's exact impairment rating relating to her back.  (Exhibit 30F)
>
> Finally, in giving Dr. Poletti's deposition testimony little weight, I have considered that Dr. Poletti stated that claimant "should likely pursue a regular course of narcotic analgesics and a path towards Social Security Disability."  The determination of disability, however, is reserved to the administrative law judge.  Furthermore, Dr. Poletti based his conclusion on the fact that claimant had not worked in years and his own estimation that the chances of someone returning to work after not working for years is "close to zero."  Once again, however, Dr. Poletti did not specify any functional limitations that would prevent claimant from returning to work, nor did he specify a basis for the statistical probability that he cited.

(Tr. 449.)

Moreover, as with the prior opinion, the ALJ's decision following remand also includes extensive discussion of the medical records, including Bowman's treatment, the clinical findings, and her reports to the medical providers.  Bowman, pointing to some of these records, appears to argue that the ALJ erred in evaluating these opinions because the records essentially demonstrate that Bowman's procedures only provided temporarily relief and that she continued to report back and hip pain.  She argues that these doctors are treating specialists.  Bowman also argues that the ALJ's summary of her daily activities was inaccurate as he failed to include the qualifications to each of these activities that Bowman provided, such as that when she cooked she would use a microwave or prepare meals that did not take very long or that she had assistance in performing some of the daily activities.  However, as with Bowman's prior appeal, the court finds that the ALJ gave appropriate reasons to discount these opinions and Bowman is essentially asking the court to reweigh



the evidence.  The ALJ's decision reflects that he considered not only the records that Bowman relies

upon but the record as a whole.

Thus, upon review of the ALJ's decision and the record, the court concludes that the ALJ

applied the relevant factors in evaluating the opinions from Dr. Netherton and Dr. Poletti and finds

that Bowman has failed to demonstrate that the ALJ's decision to afford little weight to these

opinions is unsupported by substantial evidence or based on an incorrect application of the law.  See

20 C.F.R. § 404.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not

supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be

accorded significantly less weight") (internal quotation marks and citation omitted); Dunn v. Colvin,

607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to

a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged

up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a

particular opinion[.]") (internal citations omitted).  The decision reflects that the ALJ weighed these

opinions and reasonably found that the medical findings and observations in the record did not

support them.[4]  Although Bowman may be able to point to select medical records that arguably

support the opinions, she has failed to demonstrate that the ALJ's findings are unsupported by

substantial evidence.  In fact, it is clear that the ALJ, as part of his duties in weighing the evidence,

properly relied on medical records and treatment notes in determining that the opinions were

unsupported.  See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh

---

[4]  Moreover, as observed by the ALJ, to the extent either doctor opined that Bowman is disabled or unable to work, such an opinion is reserved to the Commissioner and not entitled to special significance.  See 20 C.F.R. § 404.1527(d) (explaining that the issue of whether a claimant is disabled or unable to work is reserved to the Commissioner, and opinions by medical sources on that point are not entitled to special significance).



conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

To the extent that Bowman's arguments may be construed as alleging that the ALJ erred in giving greater weight to the opinions from non-examining state agency physicians, the court finds that Bowman has failed to demonstrate any error. Such opinions can constitute substantial evidence in support of an ALJ's decision over the opinion of an examining physician so long as the opinions from the non-examining physicians are consistent with the record as a whole. See Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986); Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004) (disagreeing with the argument that the ALJ improperly gave more weight to residual functional capacity assessments of non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by those physicians in context of other medical and vocational evidence); see also 20 C.F.R. § 404.1527(e)(2)(i) ("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified . . . [and] are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider [their] findings and opinions as opinion evidence.").

Further, contrary to Bowman's arguments, the ALJ's decision reflects that he considered evidence from outside the relevant time period; however, he found that those records "relate to a period of time well after the claimant's date last insured and, therefore, are not relevant to this decision." (Tr. 448.) Moreover, the ALJ continued:

PJG

> I note, however, that in reviewing these records, they fail to document more significant abnormalities than contained in the treatment notes prior to claimant's date last insured.  Nonetheless, such records document the provision of similar treatment provided to claimant prior to her date last insured, such as prescription medications, steroid injections, and a rhizotomy performed in October 2013. (Exhibits 27F, 28F, and 31F)  Accordingly, while these records do not pertain to the relevant time period, their content does not indicate limitations in excess of those included in claimant's assigned residual functional capacity.

(Id.)  Thus, Bowman has failed to demonstrate any error warranting remand for further consideration of these records.  See Bird v. Comm'r of Soc. Sec., 699 F.3d 337, 345 (4th Cir. 2012) (finding that consideration of medical evidence outside of the relevant time period is proper when such evidence may be "reflective of a possible earlier and progressive degeneration"); see also Cox v. Heckler, 770 F.2d 411, 413 (4th Cir. 1985) (evidence should not be disregarded merely because an evaluation occurred outside the relevant time period so long as it may be relevant to prove a disability during the relevant time period).

For all of these reasons, the court finds that Bowman has not shown that the ALJ's decision with regard to the opinion evidence and determining Bowman's residual functional capacity was unsupported by substantial evidence or reached through application of an incorrect legal standard.

**B.    Vocational Expert**

As indicated above, at Step Five of the sequential process, the Commissioner bears the burden of establishing that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy, and this burden may be met by obtaining testimony from a vocational expert.

The crux of this issue appears to be Bowman's assertion that there is a conflict between the testimony provided by the vocational expert and the occupational information in the Dictionary of



Occupational Titles ("DOT") and Selected Characteristics of Occupations Defined in the Revised

Dictionary of Occupational Titles ("SCO") and that the ALJ erred in failing to resolve this conflict

as required by SSR 00-4p.  In this case, the ALJ found at Step Five that there were jobs that existed

in significant numbers in the national economy that Bowman could perform.  Specifically, the ALJ

observed that the vocational expert testified that an individual with Bowman's age, education, work

experience, and residual functional capacity would have been able to perform the requirements of

the following occupations:

| Position Title | DOT Code | Exertional Level | SVP Level Skilled/Unskilled | Positions Nationally | Positions Statewide |
|---|---|---|---|---|---|
| Storage facility clerk | 295.367-026 | Light | SVP 2/Unskilled | 416,000 | 4,400 |
| Ticket taker | 344.667-010 | Light | SVP 2/Unskilled | 104,000 | 1,260 |
| Coupon clerk | 290.477-010 | Light | SVP 2/Unskilled | 14,700 | 200 |

(Tr. 451.)  The ALJ further found "[p]ursuant to SSR 00-4p, I have determined that the vocational

expert's testimony is consistent with the information contained in the Dictionary of Occupational

Titles."  (Id.)

The premise of Bowman's arguments that the vocational expert's testimony is inconsistent

with the DOT rests upon her assertion that the job duties described in these occupations encompass

other separately defined DOT occupations.  For example, she argues that she cannot perform the

duties of storage facility clerk because they include duties "that one would have to clean the facility

and maintain the premises in an orderly condition."  (Pl.'s Br. at 11, ECF No. 21 at 11.)  Bowman

appears to contend that those duties describe the duties of a janitorial position and that the DOT

provides that the position title of janitorial work (DOT # 381.687-18) is classified as medium work,

an exertion level which exceeds Bowman's residual functional capacity.  (Id.)

Page 13 of  16



Bowman's arguments conflate positions that are explicitly categorized as light exertional level with positions that are listed at a higher exertional level. Such an argument is without support as neither the vocational expert nor the ALJ found that Bowman could perform the position of janitorial work. Thus, Bowman has failed to demonstrate any apparent unresolved conflict between the vocational expert's testimony and the DOT.[5] See SSR 00-04p ("When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.").

Bowman's remaining arguments rest on her assertion that the positions identified exceed the limitations included in Dr. Netherton's opinion and in the questions posed by counsel to the vocational expert at the hearing. However, as discussed above, Bowman failed to demonstrate that the ALJ erred in giving those portions of Dr. Netherton's opinion little weight.

---

[5] To the extent that Bowman argues that remand is required simply because the ALJ failed to ask the vocational expert whether his testimony conflicts with the DOT as required buy SSR 00-04p, the court finds that in this case such an error was harmless because Bowman has failed to point to any apparent unresolved conflicts. See, e.g., Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007) (holding that the ALJ's failure to ask about a conflict between the vocational expert's testimony and the DOT was harmless error because no conflict appeared to exist).

Page 14 of 16



**RECOMMENDATION**

For the foregoing reasons, the court finds that Bowman has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  The court therefore recommends that the Commissioner's decision be affirmed.

May 9, 2016                                      Paige J. Gossett
Columbia, South Carolina                         UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).